# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| UNIVERSAL INSURANCE COMPANY NORTH AMERICA, </br></br>    Plaintiff, </br></br> vs. </br></br> JONATHAN COWARD, JUDITH L. POWELL, and STEPHEN POWELL, </br></br>    Defendants. | No. 2:19-cv-02224-DCN </br></br> **ORDER** |

  The following matter is before the court on plaintiff Universal Insurance Company North America's ("Universal") motion for summary judgment, ECF No. 23, and defendant Jonathan Coward's ("Coward") cross motion for summary judgment, ECF No. 26. For the reasons set forth below, the court grants Universal's motion for summary judgment and denies Coward's cross motion for summary judgment.

## I. BACKGROUND

  This declaratory judgment arises out of an injury that Coward suffered to his arm on March 10, 2017. Defendant Stephen Powell ("Powell") was using a tractor to move sand at his property when the tractor became stuck. Coward was assisting in the landscaping of a neighboring property and volunteered to help Powell free the tractor. Powell attached the tractor to his pickup truck (the "Truck") using a tow rope with a metal hook. Coward operated the tractor while Powell operated the Truck. When Powell used the truck to apply tension to the rope, the towing apparatus failed. The rope and hook flew back toward Coward, and the hook penetrated Coward's bicep (the "Incident"). Coward was transported to the hospital and alleges limited range of motion,

1

pain with use of his arm, and partial paralysis of the right hand as a result of the accident. Powell and his wife, Judith Powell (together, the "Powells"), have a homeowner's insurance policy with United, Policy Number CSVH0000001967-9 (the "Policy"). The Policy provides certain personal liability coverage for accidents that result in bodily injury but excludes liability for bodily injury that arises out of the ownership, operation, and use of a motor vehicle.

On July 18, 2019, Coward filed a negligence suit against Powell in the Court of Common Pleas for Clarendon County. No. 2019-CP-14-372; see ECF No. 23-1. On August 8, 2019, Universal filed the instant declaratory judgment action requesting that the court issue a declaration that Universal has no duty to defend or indemnify the Powells in connection with the Incident, and that Universal is entitled to attorney's fees and costs. ECF No. 1, Compl. On October 30, 2020, Universal filed a motion for summary judgment. ECF No. 23. On November 24, 2020, Coward responded in opposition and filed a cross motion for summary judgment. ECF No. 26. On December 1, 2020, Universal replied in support of its motion for summary judgment and responded in opposition to Coward's cross motion for summary judgment. ECF No. 28. The Powells have not responded to either motion, and the time to do so has now expired. As such, these motions are now ripe for review.

## II.   STANDARD

### A.  Declaratory Judgment

Universal brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the

> rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. Acknowledging Article III's circumscription of federal jurisdiction to "cases and controversies," the Declaratory Judgment Act limits its application to "case[s] of actual controversy," meaning that it "is operative only in respect to controversies which are such in the constitutional sense." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937); see also Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) ("A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution."). A declaratory judgment action presents a justiciable controversy where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

Even where a declaratory judgment action presents a justiciable controversy, the court's exercise of jurisdiction over the action is discretionary. See Wilton v. Seven Falls Co., 515 U.S. 277, 289–90 (1995); see also Trustgard Ins. Co. v. Collins, 942 F.3d 195, 201 (4th Cir. 2019) ("[The Declaratory Judgment] Act gives federal courts discretion to decide whether to declare the rights of litigants."). Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)) (internal quotation marks omitted). The Fourth Circuit calls for "liberal[ ] constru[ction]" of the Declaratory Judgment Act to fulfill "the purpose intended, i.e., to

3

afford a speedy and inexpensive method of adjudicating legal disputes[ ], and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." Id.  A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Quarles, 92 F.2d at 325.

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

#### A. Declaratory Judgment Authority

No party has argued that it would be inappropriate for the court to enter a declaratory judgment in this case. In determining whether Universal has a duty to defend and indemnify in connection with the Incident, this case raises issues of law whose resolution would "serve a useful purpose in clarifying and settling the legal relations in issue[.]" Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994). Furthermore, "[a]n actual controversy exists between an insurer, on the one hand, and a third party injured by the insured, on the other, when the insurer has initiated a declaratory judgment action against both its insured and the injured third party seeking court determination of its obligations under an insurance policy." Md. Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, point cite (1941). Moreover, because the parties ask the court to declare whether Universal is obligated to defend the Powells in the Underlying Action—not just whether it would be obligated to indemnify should the Powells be found liable—the injury to Universal is not too "hypothetical and contingent in nature" to establish standing. See Trustgard Ins. Co., 942 F.3d at 200. As such, the court finds that it may, in its discretion, enter a declaratory judgment in this action and proceeds with its analysis with respect to the parties' summary judgment motions.

#### B. Summary Judgment Motions

Universal argues that it is entitled to summary judgment that the Policy does not cover the Incident because it is excluded under the motor vehicle liability exclusion in the Policy. Coward, on the other hand, argues that he is entitled to summary judgment that the Policy does cover the Incident because it does not fall under the motor vehicle

liability exclusion. As noted above, the Policy provides personal liability coverage and requires Universal to defend claims made or suits brought against the Powells for damages because of bodily injury caused by an accident. ECF No. 8-2 at 22. However, under the motor vehicle liability exclusion, the Policy does not provide coverage for liability "arising out of" the ownership, maintenance, occupancy, operation, or use of a "self-propelled land or amphibious vehicle" that is "registered for use on public roads or property."[1] ECF No. 8-2 at 7-8.

      Universal argues that the Incident arose out of the ownership, operation, and use of the Truck such that it is not covered under the Policy. Coward, on the other hand, argues that the motor vehicle liability exclusion does not apply to the Incident because his allegations in the Underlying Action are "limited to the selection and use of the towing rope and apparatus." ECF No. 26 at 6. In other words, Coward alleges in the Underlying Action that the Incident occurred only because Powell used the wrong type of rope in his attempt to tow the tractor, which Coward argues is unrelated to the ownership, operation, and use of the Truck. Coward also argues that the language of the motor vehicle liability exclusion is ambiguous, and this ambiguity should be resolved in Coward's favor. The dispositive issue in this case is whether the Incident fits within this motor vehicle liability exclusion. After examining South Carolina insurance law and applying it to the facts of this case, the court finds that it does.

---

[1] The parties do not dispute that the Truck was registered for roads at the time of Coward's injury.

**1. Applicable Insurance Law**

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. In a diversity case, a federal court must apply the choice of law rules of the state in which it is located. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see Spartan Iron & Metal Corp. v. Liberty Ins. Corp., 6 Fed. App'x. 176 (4th Cir. 2001). South Carolina choice of law encompasses both the traditional lex loci contractus doctrine and S.C. Code Ann. § 38–61–10.

Historically, South Carolina courts followed the rule of lex loci contractus and applied the law of the state where the insurance contract was formed. See, e.g. Bowman, 229 F.3d 1141 (citing Jones v. Prudential Ins. Co., 42 S.E.2d 331, 333 (S.C. 1947)) (holding that, under the traditional lex loci contractus rule in the absence of § 38–61–10, the contract was governed by the law of the place where it was formed, despite the insured's move into South Carolina where the action was brought); Unisun Ins. Co. v. Hertz Rental Corp., 436 S.E.2d 182, 184 (S.C. 1993) (holding that a contract for insurance is governed by the law of the state where the application was made, the policy delivered and the contract formed).

However, the traditional rule of lex loci contractus was modified by Section 38–61–10 of the South Carolina Code, enacted in 1947. That statute provides:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the state and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38–61–10. "Where this statute applies, it governs as South Carolina's rule of conflicts." Sangamo Weston Inc. v. Nat'l Surety Corp., 414 S.E.2d 127, 130 (S.C.

1992) (applying the code to an insurance contract executed outside the state between non-resident parties because the insured property at issue was located within the state).

The parties both agree that the substantive law of the State of South Carolina applies to this matter, and the court is satisfied that South Carolina law applies since the Powells are South Carolina residents and the Policy covers South Carolina property. See Okatie Hotel Grp., LLC v. Amerisure Ins. Co., 2006 WL 91577, at *4 (D.S.C. Jan. 13, 2006) ("[T]he plain language of § 38–61–10 contemplates a broad application of South Carolina law to insurance contracts with any significant connection to South Carolina."). The court therefore analyzes this case under South Carolina substantive law.

In South Carolina, insurance policies are subject to general rules of contract construction. See Am. Credit of Sumter, Inc. v. Nationwide Mutual Ins. Co., 663 S.E.2d 492, 495 (S.C. 2008). "Courts interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning." M & M Corp. of S.C. v. Auto-Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010). "Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." Clinton v. Am. Nat. Prop. & Cas. Co., 25 F. Supp. 3d 831, 834 (D.S.C. 2014) (internal citation and quotation omitted). Although the insured bears the burden of establishing that a claim is covered by an insurance contract, "the insurer shoulders the burden of establishing the exclusions to coverage." Jensen v. Selective Ins. Co. of Se., 2013 WL 3148341, at *2 (D.S.C. June 19, 2013) (citing Boggs v. Aetna Cas. & Sur. Co., 252 S.E.2d 565, 568 (S.C. 1979)). Further, "exclusions in an insurance policy are always construed most strongly against the insurer." Am. Credit of Sumter, 663 S.E.2d at 495 (internal citation omitted).

Nonetheless, "insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." S.C. Farm Bureau Mut. Ins. Co. v. Dawsey, 638 S.E.2d 103, 104 (S.C. Ct. App. 2006) (citation omitted).

As the South Carolina Supreme Court has explained, "where the language of a contract is free from ambiguity, its construction is for the Court." Rhame v. Nat'l Grange Mut. Ins. Co., 121 S.E.2d 94, 96 (S.C. 1961) (citing Charleston & W. C. Ry. Co. v. Joyce, 99 S.E.2d 187 (S.C. 1957)). In considering interpretation of an insurance contract, the court noted:

> It is a well settled rule that the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. However, in cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. If the intention of the parties is clear, the Courts have no authority to change the contract in any particular. The Court has no power to interpolate into the agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties.

Quinn v. State Farm Mut. Auto. Ins. Co., 120 S.E.2d 15, 16 (S.C. 1961) (internal citations omitted). Further, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." State Auto Prop. & Cas. Co. v. Brannon, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992).

### 2. Ambiguity

The court rejects Coward's argument that the Policy is ambiguous. Coward argues that the Policy is ambiguous because "it is unclear what 'operation' and 'use' of a motor vehicle mean," and, as such, the Policy should be construed strictly in favor of

9

coverage. ECF No. 26 at 8. The court finds the ambiguity Coward posits does not exist. There is no technical language or context to suggest that the terms "use" and "operate" should be given anything other than their plain, ordinary, and popular meanings. M & M Corp., 701 S.E.2d at 35 ("Courts interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning."). Indeed, as explained below, it would require the court to torture the meaning of those terms to find that they do not apply in this context. As such, the court will apply the plain and ordinary meaning of the terms to the motor vehicle liability exclusion. See Sloan Constr. Co. v. Cent. Nat'l Ins. of Omaha, 236 S.E.2d 818, 819 (S.C. 1977) ("Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary[,] and popular meaning."); Bennett & Bennett Const., Inc. v. Auto Owners Ins. Co., 747 S.E.2d 426, 428 (S.C. 2013) ("When policy language is undefined, courts must give it its plain, ordinary, and popular meaning.").

### 3. Cause of the Incident

The court is also unpersuaded by Coward's argument that the motor vehicle liability exclusion does not apply. Coward argues the exclusion is inapplicable because, in the Underlying Action, he only alleges negligence due to Powell's selection of the tow rope—not due to his use of the Truck. Thus, Coward argues that any liability in the Underlying Action would not "arise out of" the ownership, operation, or use of the Truck. The court disagrees. "[F]or the purpose of construing an exclusionary clause in a general liability policy, 'arising out of' should be narrowly construed as 'caused by.'" McPherson By and Through McPherson v. Michigan Mut. Ins. Co., 426 S.E.2d 770, 771

10

(S.C. 1993). The negligence theory employed by Coward in the Underlying Action is not determinative of the question of causation. As the South Carolina Court of Appeals has explained, "[c]overage does not turn on the legal theory under which liability is asserted, but on the cause of the injury." Reeves v. S.C. Mun. Ins. & Risk Fin. Fund, 832 S.E.2d 312, 322 (S.C. Ct. App. 2019). In other words, the Policy does not insure against the theory of liability employed by Coward; it insures against the cause of his arm injury.

To satisfy the "caused by" standard, the nexus between the cause and effect must be "immediate and direct." See S.C. Farm Bureau Mut. Ins. Co. v. Berlin, 2005 WL 7082978, at *3 (S.C. Ct. App. Jan. 25, 2005) (finding that damage to insured's home was "caused by" honeybees where "the nexus between the honeybees, honey, and damage [was] immediate and direct"). It is clear that, even if Powell were negligent in selecting the tow rope, the operation and use of the Truck caused the Incident. See Scottsdale Ins. Co. v. GS Thadius LLC, 328 F. Supp. 3d 527, 538 (D.S.C. 2018) (finding that an insurance policy's assault and battery exclusion precluded coverage when assault and battery was only one of multiple causes of the injury); Catlin Specialty Ins. Grp. v. RFB, Inc., 2017 WL 2493125, at *2 (D.S.C. June 8, 2017) ("Although the injuries may have been caused by the negligent acts of the defendant, that does not necessarily mean that they did not arise out of an assault and/or battery."). Coward's complaint in the Underlying Action alleges that the hook flew back and struck Coward due to the "strains of towing" and the "forces of the intended towing application." ECF No. 23 at 7 (citing ECF No. 23-1 at ¶¶ 9.b., 9.d). Such strains and forces were the immediate and direct result of Powell's operation and use of the Truck. Indeed, Coward himself testified that "Powell's aggressive operation of the pickup truck caused the rope to snap back and

11

shred [his] right arm." ECF No. 23-3 at 17- 20 (emphasis added). Powell likewise testified that "was it not for the tension applied by the truck, the rope would not have failed." ECF No. 23-2 at 57:2-4. An eyewitness also testified that the rope and hook flew back at Coward when Powell put pressure on the rope with the Truck. ECF No. 23 at 9. Thus, regardless of the theory of liability pursued by Coward in the Underlying Action, the Incident certainly arose out of the ownership, operation, or use of the Truck.

As such, the court finds that the motor vehicle liability exclusion applies to the Incident, meaning that Universal has no duty to defend or indemnify the Powells in connection with the Incident. Universal makes no argument with respect to its request for attorney's fees and costs, however, and the court declines to award the same in the absence of any supporting argument.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Universal's motion for summary judgment and **DENIES** Coward's cross-motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**January 28, 2021
Charleston, South Carolina**